SLOAN *v.* WARREN CIVIL SERVICE COMMISSION

OPINION OF THE COURT

1. APPEAL AND ERROR—MOTION FOR DIRECTED VERDICT.

Evidence must be reviewed in the light most favorable to plaintiffs where an appeal tests the propriety of the trial court's grant of motion for directed verdict at the close of plaintiffs' proofs.

2. APPEAL AND ERROR — REMAND — LABOR RELATIONS — COLLECTIVE BARGAINING AGREEMENT — MUNICIPAL CORPORATIONS — CIVIL SERVICE COMMISSION.

Case should be remanded to trial court for continuation of an aborted trial where, on the record, the Michigan Supreme Court cannot answer the questions of whether or not a union contract, the terms of which may be in conflict with specific civil service rules and regulations, has the legal effect of abrogating such regulations and whether a collective bargaining agreement can by its terms provide grievance machinery which supersedes the jurisdiction of a properly established municipal civil service commission.

SEPARATE OPINION

ADAMS and WILLIAMS, JJ.

3. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—PUBLIC EMPLOYEES—CONSTITUTIONAL LAW.

*The Public Employment Relations Act was enacted pursuant to the Michigan constitutional provision which expressly au-*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error §§ 110, 111.

[2–8] 48 Am Jur 2d, Labor and Labor Relations § 1191 *et seq.*

thorizes the legislature to "enact laws providing for the resolution of the disputes concerning public employees, except those in the state classified service" (Const 1963, art 4, § 48).

4. LABOR RELATIONS—CONTRACTS—MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION.

Labor union contract provision, if any, would govern in the event of conflict with a provision of a municipal civil service commission if the contract set forth which job groupings and classifications were "equal" for bumping purposes; if the contract fails to specify occupation groupings that are equivalent for bumping purposes, the residual powers of the civil service commission would make it the proper party to determine the interchangeability of skills for seniority bumping across job classifications.

5. LABOR RELATIONS—CONTRACTS—PREEMPTION—MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION.

The Michigan Court of Appeals erred in concluding that a municipal civil service commission duty to classify jobs could not have been preempted by a labor contract.

6. LABOR RELATIONS—CONTRACTS—SENIORITY—MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSION.

Trial court should determine whether a union contract defined equal jobs in different occupational groups so as to establish to which job groupings seniority could be transferred; if the union contract did not cover this matter, then the municipal Civil Service Commission was the appropriate body to determine interchangeability of occupational groups for seniority bumping purposes pursuant to its rules.

7. MANDAMUS—CIVIL SERVICE COMMISSION—LABOR RELATIONS.

Mandamus should issue against a municipal civil service commission as the proper party as opposed to the mayor or other official designated to represent the public employer in such matters if the plaintiffs prevail in an action to compel their reinstatement to their prior positions of city employment and if it is determined the commission was the agent of the city for hiring or discharge of employees.

8. JUDGMENT — PARTIES — MUNICIPAL CORPORATIONS — LABOR RELATIONS.

Any money judgment should run against the city, assuming it has been made a proper party to the case, and in the event plaintiffs prevail in an action to compel their reinstatement to their prior positions of city employment.

Appeal from Court of Appeals, Division 2, Lesin-
ski, C. J., and Quinn and O'Hara, JJ., reversing
and remanding Macomb, Alton H. Noe, J.   Sub-
mitted October 7, 1971.   (No. 9 October Term 1971,
Docket No. 53,183.)   Decided December 21, 1971.

26 Mich App 555 remanded to trial court.

Complaint by Joseph Sloan and James Shipley
against Warren Civil Service Commission, Warren
Personnel Director, Director of the Department of
Public Service of Warren, and the Mayor of Warren
for a writ of superintending control in the nature
of mandamus to compel reinstatement of plaintiffs
to their prior positions of city employment.   Local
1250, AFSCME, AFL-CIO was joined as a party
defendant.   Complaint dismissed.   Plaintiffs ap-
pealed to the Court of Appeals.   Reversed and
remanded for further action.   Defendant Union
appeals.   Remanded to trial court.

*David N. Walsh,* for plaintiffs.

*Zwerdling, Miller, Klimist & Maurer* (by *William
L. Martens*), for defendant Union.

T. E. BRENNAN, J.   On March 20, 1967, this action
was instituted by plaintiffs, employees of the City
of Warren against the Civil Service Commission
of Warren and its personnel director, seeking by
way of complaint for superintending control in the
nature of mandamus the reinstatement of plaintiffs
in city employment.

An order to show cause why the plaintiffs should
not be reinstated was issued.   The order to show
cause was returnable on March 27, 1967.   On March
22, 1967, the defendants, Civil Service Commission

and Holmes, filed an answer to the complaint and a notice of affirmative defenses. The record does not show the disposition of the order to show cause. However, on April 24, 1967, a supplemental complaint was filed, alleging the following:

"1. That a Complaint for Superintending Control and Order to Show Cause was before this Court on March 27, 1967 upon the plaintiffs request for reinstatement with backpay, and it waš adjourned so the defendant Civil Service Commission could hold a hearing to determine the same question.

"2. That the said hearing was held by the defendant on April 11, 1967 and a decision was issued reinstating the plaintiffs, forthwith on April 21, 1967, but no provision was made for backpay lost as a result of the illegal removal.

"3. That despite the decision and order of the Commission, the plaintiffs have still not been returned to their employment with the city; and, moreover, they have been deprived of their compensation for wages lost."

Still another order to show cause was issued, returnable on May 1, 1967. The record does not show disposition of this order to show cause. However, on May 2, 1967, a further supplemental complaint was filed, which began as follows:

"1. That on May 1, 1967 the Circuit Court for the County of Macomb, after hearing in open court with attorneys' [sic] for the respective parties presenting arguments, issued an order allowing the filing of this supplemental complaint with the addition of parties, STANLEY DAYNE AND HONORABLE MAYOR TED BATES, pursuant to powers vested in the court by the Statutes of the State of Michigan and Michigan General Court Rules, effective 1963, including M.S.A. 27A611 and 27A615 and GCR 204 & 205."

The record does show that on April 25, 1967, the circuit court entered an order granting plaintiffs' leave to file a supplemental complaint and add parties defendant. On May 9, 1967, the circuit judge joined Local 1250, American Federation of State, County and Municipal Employees, AFL-CIO, as defendants. That order recites that it was granted upon motion of the defendants. The record does not disclose that the City of Warren was itself ever made party to these proceedings.

The city attorney appeared and is designated in various pleadings as "Attorney for defendant City of Warren". It is assumed that the city attorney appeared on behalf of the defendant Civil Service Commission and the individual defendants Dayne, Bates and Holmes. On May 10, 1967, an answer was filed by the city attorney to the plaintiffs' supplemental complaint dated April 24, 1967. This answer contains the following:

"2. Answering paragraph 2, defendants admit the allegations therein contained."

We take this to mean that the Civil Service Commission, its personnel director, the mayor, and defendant Dayne, who is elsewhere described as the director of public services, were admitting that the defendant Civil Service Commission had held a hearing on April 11, 1967, and issued a decision on April 21, 1967, calling for the reinstatement of the plaintiffs.

On May 25, 1967, the defendant Union appeared and filed its answers to the complaint and supplemental complaint. On November 30, 1967, the trial judge entered an order setting the cause for trial as a nonjury matter. One would wonder at this juncture what the purpose of such a trial was in-

tended to be.   In capsule, the situation stood in
this way:

Plaintiffs had commenced an action for mandamus
against the Civil Service Commission, asking that
they be reinstated.   The Civil Service Commission
had held a hearing and had ordered a reinstatement
of the plaintiffs.   The fact of that hearing and the
decision of the Civil Service Commission was alleged
by the plaintiffs and admitted by the defendants.
The prayer for relief in the May 2, 1967, supple-
mental complaint is as follows:

"WHEREFORE, plaintiffs pray for this Honor-
able Court to enter an Order Requiring the City of
Warren, through its administrator, to put the plain-
tiffs back to work at their regular job as Water
Sewer Maintenance Men I, beginning immediately,
with full compensation in the amount of $1,785.00,
minus any monies received from the city since their
lay off."

We are at a loss to explain on what theory it was
supposed that the court would enter an order re-
quiring the City of Warren to reinstate the plaintiffs
when the City of Warren was not a party to the
litigation.   But to construe the plaintiffs' pleadings
in the light most favorable to them, we will assume
that the intent of this prayer for relief was that
the circuit court issue an order of superintending
control directed to the mayor and the defendant
Dayne requiring them to reinstate the plaintiffs on
their jobs as city employees.   The substance of the
defendants Dayne and Bates reason for refusing
to carry out the decision of the Civil Service Com-
mission is contained in paragraph 6 of its answer to
the supplemental complaint.   It reads in pertinent
part as follows:

"6. Answering paragraph 6, defendants admit
that plaintiffs reported for work in their former

positions on April 24, 1967. They further admit that the defendant Stanley Dayne told them he was not putting them back to work. Defendants also admit that other men appeared to have more seniority than the plaintiffs in the position formerly held by plaintiffs. Further answering paragraph 6, defendants deny that the plaintiffs were refused employment because of any statement by any union. Defendants allege on the contrary that plaintiffs were refused employment because of the evident conflict between defendant Civil Service Commission's ruling of April 21, 1967 and an agreement reached on February 17, 1967 between Local 1250, American Federation of State, County and Municipal Employees, AFL-CIO, and the then administration. This agreement established a bumping procedure which was required because a number of positions in the Sanitation Division of the City of Warren were abolished."

The defendant Union by way of affirmative defense similarly claim:

"2. That on or about February 17, 1967, the City of Warren and defendant Local 1250 agreed that employees in the Sanitation Division of the Department of Public Service whose positions were abolished were to bump other employees in the Department of Public Service who held equivalent positions, and who had less seniority than the affected Sanitation Division employees. Said agreement is binding upon plaintiffs and other employees in the bargaining unit."

On September 13, 1968, trial commenced before the Honorable Alton H. Noe, circuit judge for Macomb County.

Plaintiffs called Mr. Raymond Richard, former president of Local Union 1250, for cross-examination under the statute. Plaintiff Sloan thereafter testified in his own behalf, followed by one Calvin

Godley, assistant superintendent of the Water Department of the City of Warren, Leonard Frank Solecki, a co-worker of the plaintiffs and vice-president of the defendant Local Union, Marvin Ray Winn, a foreman of the Water Department under whom plaintiffs had been employed. James Shipley, one of the plaintiffs, then testified in his own behalf, followed by William Collins, assistant comptroller of the defendant City of Warren, who was also called as a witness for the plaintiffs. At the conclusion of Collins' testimony, the plaintiff rested and the defendants moved for a directed verdict. This motion was granted by the trial court, and on appeal the Court of Appeals reversed and remanded. We granted leave to appeal on the application of the defendant Local Union 1250.

Inasmuch as this appeal tests the propriety of the trial court's grant of motion for directed verdict at the close of plaintiffs' proofs, we must view the evidence in the light most favorable to the plaintiffs.

An attempt to reconstruct the facts of this case from the testimony in the record even on favorable view is immensely difficult. The trial seems to have been essentially concerned with the existence or nonexistence of a union contract between the defendant union and the City of Warren, and the question of whether such a contract, if it existed, contained provisions regarding layoff procedures and priority. While the defendant union in its answer to the supplemental complaint had neither admitted nor denied the plaintiffs' allegation concerning the hearing before and decision by the Civil Service Commission, the existence of that decision was never proven at the trial.

In seeking an explanation for that apparently glaring omission, we find the following statement

by the Union's attorney made in the course of an objection:

"*Mr. Chrzanowski:* I am going to object to that line of questioning. It is not in the issues. We have previously stipulated to the issues that are going to be involved in this particular matter, and the Civil Service hearings are not in issue in this case."

Supporting counsel's reference to a pretrial stipulation, the record discloses that on February 2, 1968, the trial judge entered an order approving a stipulation of issues to be determined upon the trial. That stipulation of issues was as follows:

"1. Can Local Union No. 1250 legally bind plaintiff members by agreeing with the City with respect to 'Bumping' procedure followed by the City, as the result of a garbage disposal contract made with a private enterprise?

"2. Was there a labor contract between the said Local Union and the said City? Assuming there was no labor contract, is it necessary that such a contract exist before the Union can bind plaintiff members with respect to 'Bumping' procedure?

"3. Can an agreement, written or oral, between the Union and City supersede rules and regulations of the Civil Service Commission; and did an agreement, if any, contravene the rules and regulations of said Civil Service Commission with respect to 'Bumping' procedure?

"4. Did plaintiff members bring their grievance, if any, in the proper forum, and were there administrative, contract and/or internal union remedies which were not exhausted?

"5. If reinstatement of plaintiffs is ordered, what are the damages to which they are entitled?"

Further confusing the posture of this case is the stipulation and order entered in the Court of Appeals on the 17th of April, 1970, requiring the sub-

mission and filing in the Court of Appeals of a true copy of a labor agreement of 1951, "referred to in this cause".

Apparently, in response to that order, there was filed, and the appendix in this Court includes, an agreement described as follows:

## "AGREEMENT

"This agreement, made and entered into this 6th day of April, A.D. 1950, by and between the Warren Township Water Board of Warren Township, Macomb County, Michigan, hereinafter referred to as the Board, and the Warren Township Employees, Local Union No. 1250, A.F.S.C. & M.E., hereinafter referred to as the Union."

On its face, that agreement was between the Warren Township Water Board and a local union. That agreement calls for automatic renewal from year to year, absent written notice of desire to terminate or modify, and it further provides for partial amendment without changing other terms of the agreement.

The agreement states that it shall be binding upon the parties and their successors. There is no evidence in this record that the City of Warren is the successor of the Warren Township Water Board, or that the defendant Union is the successor of the Warren Township Employees Local Union. Neither is there any evidence in the record of any written notices ever having been given by either party of its desire to terminate or modify the agreement. And the testimony in the record with respect to a supposed oral contract between the Union and the City of Warren is hardly sufficient to warrant any conclusion with respect to the existence or nature of oral amendments to the union contract.

This circumstance is not surprising. The original complaint filed herein made absolutely no reference to any union contract. Nor have the plaintiffs ever alleged the existence of a union contract, or sought to enforce any rights thereunder. If there is a union contract, it is for the defendants to prove in the trial court, by competent evidence, that the union contract exists and what its provisions are. It is further for the defendants to show, as a matter of law, that the contract is a bar to the relief which plaintiffs seek.

The purpose of plaintiffs' inquiry into the existence of the union contract during presentation of this case in chief is not clear. On favorable view, however, we must conclude that no contract was proven. Putting it in another way, the plaintiffs seem to have had a *prima facie* case made out for them on the basis of the allegation that the Civil Service Commission had ordered their reinstatement, which allegation was admitted by all of the defendants except the Union, and the Union's stipulation that the Civil Service decision was not an issue. The plaintiffs did not defeat their *prima facie* case for reinstatement by attempting to disprove the affirmative defense interposed by the defendants. On this record we cannot answer the question of whether or not a union contract, the terms of which may be in conflict with specific civil service rules and regulations, has the legal effect of abrogating such regulations. Neither can we answer on this record the question of whether a collective bargaining agreement can by its terms provide grievance machinery which supersedes the jurisdiction of a properly established municipal civil service commission.

This cause is remanded to the trial court for the continuation of the aborted trial; and in view of the

nature of the issue, counsel and the trial judge are admonished to make a complete and intelligible record, including the testimony of witnesses in support of all pleaded matters of fact, the proper identification and admission of all written exhibits, and the preparation and filing of findings of fact and conclusions of law in an orderly fashion so that future appellate courts will be able to pass upon the issues raised.

Remanded, with costs to the appellees.

T. M. Kavanagh, C. J., and Black, T. G. Kavanagh, Swainson, and Williams, JJ., concurred with T. E. Brennan, J.

Adams, J. (*separate opinion*). The issue of law posed by defendant, Local Union 1250, AFSCME, AFL-CIO, is stated as follows: "Does a municipal civil service commission have jurisdiction to issue an order which abrogates the terms and conditions of a collective bargaining agreement entered into by a public employer and a labor union pursuant to the Public Employment Relations Act?"

As noted by Justice T. E. Brennan in his opinion, the record before us in this case is singularly inadequate. It would appear, however, that the contract provision between the City and the Union and the civil service provision with regard to bumping are the same. The Court of Appeals so concluded.[1] If this is the situation, the dispute then focuses on two questions:

---

[1] "The Commission's rules and regulations provide for the transfer of employees, in case of layoffs to equal or lower job classifications. The labor agreement, as written, contemplates transfers in case of layoffs to jobs of *lower* classifications, but appears from the testimony below to have been orally amended to also provide for transfers to jobs of equal classification in case of layoffs. To that extent, therefore, the labor agreement is entirely consistent with the civil service plan." 26 Mich App 555, 564.

1. What was the labor contract agreement, if any, covering classifications, and interchangeable occupational groupings for seniority bumping purposes?

2. If there was no such agreement, what were the civil service provisions with regard to classification and interchangeable occupational groupings for seniority bumping purposes and were they properly implemented by the Civil Service Commission decision in this case?

PERA[2] was enacted pursuant to the 1963 Michigan Constitution, art 4, § 48, which expressly authorizes the legislature to "enact laws providing for the resolution of disputes concerning public employees, except those in the state classified service." We recently held *per curiam* in *Board of Control of Eastern Michigan University* v. *Labor Mediation Board* (1971), 384 Mich 561, that PERA properly covers employer-employee relationships for all government employment in Michigan except the state civil service.

In another recent *per curiam* decision, *Wayne County Civil Service Commission* v. *Board of Supervisors* (1971), 384 Mich 363, the Wayne County Civil Service Commission sought by declaratory judgment to establish its role as the exclusive bargaining agent of the county in dealing with all employees of the county pursuant to PERA. We held that PERA[3] superseded the county civil service act[4] where both acts deal with the same subject matter (p 374):

"Hence, the original authority and duty of the plaintiff civil service commission was diminished *pro*

---

[2] PA 1947, No 336, as amended by PA 1965, No 379 (MCLA § 423.201 *et seq.;* Stat Ann 1968 Rev § 17.455[1] *et seq.*).

[3] PERA, see fn 2, *supra.*

[4] PA 1941, No 370 (MCLA § 38.401 *et seq.;* Stat Ann 1961 Rev § 5.1191[1] *et seq.*).

*tanto,* by the act of 1965, to the extent of free administration of the latter according to its tenor."

We further found that "the act of 1965 operates *'to the extent of repugnancy,'* as a partial repeal of the act of 1941; but no more than that." In this case, it needs to be determined to what extent the labor contract operated to repeal the authority of Civil Service, and to what extent Civil Service may have retained authority or have been given authority to act as the agent of the public employer, the city. In other words, there remains a possible diminished authority in Civil Service 1) to serve as the agent of the public employer in labor matters, if so authorized by the public employer, or 2) to determine job classifications, absent union contract provisions with the city agreeing to various specified job classifications.

The labor union contract provision in this case, if any, would govern in the event of conflict with a provision of the Civil Service Commission if the contract set forth which job groupings and classifications were "equal" for bumping purposes. If the contract fails to specify occupational groupings that are equivalent for bumping purposes, the residual powers of the Civil Service Commission would make it the proper party to determine the interchangeability of skills for seniority bumping across job classifications.

In this case, the factual issue as to job classification and occupational group equivalence for bumping across and down is unresolved.[5] Specifically,

---

[5] The Court of Appeals attempted to resolve this issue by deduction: "In this case, it was inherent in the Commission's ruling that 'Water and Sewer Maintenanceman 1' was a *higher* job classification than 'Equipment Operator 1.' Such a ruling was necessary to implement both the layoff provisions of the Commission's rules and regulations and the 'bumping' provision of the labor agreement. Since, by ordinance, the Commission is charged with the duty of classifying jobs, we conclude that the trial court should have followed the

the trial court should determine whether the union contract defined equal jobs in different occupational groups so as to establish to which job groupings seniority could be transferred.[6] If the union contract did not cover this matter, as it appears it did not, then the Civil Service Commission was the appropriate body to determine interchangeability of occupational groups for seniority bumping purposes pursuant to its rules.

In the event plaintiffs prevail on the above issues, the remaining questions are: 1) against whom should mandamus issue, and 2) against whom should any money judgment run? As to the first question, if it is determined that Civil Service was the agent of the city for hiring or discharge of employees, Civil Service would be the proper party against whom mandamus should issue as opposed to the mayor or other official designated to represent the public employer in such matters. As to the second question, any money judgment should run against the city, assuming it has been made a proper party to the case.

I agree with Justice T. E. BRENNAN as to the need for clarification of the issues and parties to this lawsuit. It seems to me that the above stated issues are the key factual matters that need to be determined on remand.

I vote to remand to determine the factual issues and for further proceedings in accordance with such determinations. The trial judge should carefully

---

Commission's order." (P 564.)

The Court of Appeals erred in concluding that the Civil Service Commission duty to classify jobs could not have been preempted by the labor contract.

[6] For example, although a sewer maintenanceman and a secretary may have the same pay classification, it is unlikely they would be placed in similar occupational groupings for seniority bumping purposes.

make full findings of fact in accordance with GCR 1963, 517.1. Costs to abide the final result.

WILLIAMS, J., concurred with ADAMS, J.